UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHARLES LEE LOFTLY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:19-CV-056 |
| | ) | 2:15-CR-132 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Before the Court is Charles Lee Loftly's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 249] and his *pro se* motion to amend/revise his 2255 motion to vacate [Doc. 13].[1] The United States has responded in opposition [Doc. 8], and Petitioner filed a reply [Doc. 11]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 249] will be **DENIED**, and Petitioner's motion to amend/revise [Doc. 13] will be **DENIED**.

## I. BACKGROUND

In November 2015, Petitioner and three co-defendants were charged in an eleven-count indictment pertaining to conspiracy and distribution of 280 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), and

[1] Document numbers not otherwise specified refer to the civil docket.

Schedule II controlled substance. [Crim. Doc. 3]. Petitioner was named in five counts as well as drug forfeiture allegations. *See id.*

On February 17, 2016, Petitioner entered into a plea agreement with the government. [Crim. Doc. 25]. Petitioner agreed to plead guilty to Count One – conspiracy to distribute or possess with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. [*See id*.] The plea agreement was signed by Petitioner and attorney J. Russell Pryor.

In his plea agreement, Petitioner acknowledged that in the fall of 2013, local and state law enforcement agencies and the Federal Bureau of Investigation began a joint investigation into a suspected drug-trafficking conspiracy in the Eastern District of Tennessee. As part of that investigation, on September 26, 2014, agents with the Tennessee Bureau of Investigations ("TBI") debriefed Petitioner, who had previously served as a source of information for investigators about ongoing drug activity and who, at the time of the interview, was serving a sentence for a prior state drug conviction. Petitioner provided detailed information about the drug-trafficking activities of another individual, including details about his own involvement in those activities. Based on the information Petitioner provided, investigators determined that Petitioner had purchased from the other individual approximately 5,264 grams of crack cocaine. Because of these admissions, investigators began to focus on Petitioner as well in their continuing investigation.

In the summer of 2015, one of the investigators' confidential sources, "CS-6," provided information about Petitioner's involvement in the conspiracy and explained that he owed a drug debt to Petitioner. Investigators and CS-6 executed a controlled transaction

with Petitioner during which CS-6 satisfied the $800 debt. Throughout June and July of 2015, another confidential source, "CS-22," contacted law enforcement about Petitioner's involvement in the conspiracy. During this time, investigators and CS-22 conducted several controlled transactions between CS-22 and Petitioner with a total drug quantity of approximately 58 grams of crack cocaine.

During a debriefing interview with investigators in July 2015, Petitioner admitted his involvement in the conspiracy and identified numerous co-conspirators. Specifically, he admitted to procuring approximately 588 grams of crack cocaine from a co-defendant from 2011 to 2015 and obtaining powder cocaine from a source identified as "Alpha" and then partnering with another co-defendant, to process the powder cocaine into crack cocaine for resale. Another informant, "CS-19," advised investigators that he had sold user quantities of crack cocaine on behalf of Petitioner for approximately four weeks. The information CS-19 provided about these transactions resulted in a drug-quantity determination of approximately 231 grams of crack cocaine. Based on police actions, controlled transactions, Petitioner's own admissions, and statements of cooperators and co-conspirators, investigators reached a cumulative estimate of more than 6,000 grams of crack cocaine attributable to Petitioner. [*Id*.].

Pursuant to the agreement, Petitioner stipulated that the 5,264 grams of crack cocaine he admitted to having purchased during his September 26, 2014, interview with TBI agents was relevant conduct. He agreed that, for purposes of sentencing, he was accountable for at least 2.8 kilograms, but less than 8.4 kilograms, of crack cocaine; he maintained a premises for the purpose of manufacturing or distributing a controlled

substance, *see* USSG § 2D1.1(b)(12); and he was an organizer, leader, manager, or supervisor of criminal activity, *see* USSG § 3B1.1(c). The plea agreement included a waiver of Petitioner's appellate rights, in which he agreed not to file a direct appeal of his conviction or sentence. He, however, retained "the right to appeal a sentence imposed above the sentencing guidelines range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater." Petitioner also agreed not to file any 28 U.S.C. § 2255 motion or other collateral attack on his conviction or sentence unless based on claims of ineffective assistance of counsel or prosecutorial misconduct. [*Id*.].

The Court conducted a change of plea hearing on February 25, 2016. At the hearing, the Court confirmed that Petitioner was competent to plead guilty and that he indeed wished to do so. [Crim Doc. 228]. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with his attorney; that he believed that his attorney is fully aware of all the facts on which the charges were based; that counsel had explained the meaning of any words Petitioner might not have understood; that counsel had explained the terms of Petitioner's plea agreement to him; and that Petitioner understood that his sentence would be determined *by the Court*. [*Id*.].

The presentence investigation report ("PSR") calculated a total offense level of 35 and criminal history category of VI, resulting in a guideline range of 292 to 365 months. [Crim. Doc. 35, ¶ 101]. The statutorily required minimum sentence was 20 years [*Id*. at ¶ 100]. The PSR also noted that had the United States had chosen to file for statutory sentencing enhancements based upon Petitioner's two prior felony controlled substance

convictions Petitioner would have been subject to mandatory life incarceration. [*Id*. at ¶ 104].

The government did not file any objections to the PSR. The government filed a sealed motion for downward departure and sentencing memorandum requesting the Court grant a six-level reduction pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), reducing Petitioner's offense level to a 29, resulting in a guideline range of 151 to 188 months. [Crim. Doc. 165].

Petitioner, through counsel, filed a notice of objections to the PSR, objecting to the following: the lengthy description of the bare allegations leading to his initial charge of his juvenile adjudication in ¶ 72 of the PSR; the lengthy narrative of extraneous, unsubstantiated allegations related to his charge and fine for 3rd degree possession of a forged instrument in ¶ 75 of the PSR; the unnecessary narrative of a dismissed case in ¶ 89 of the PSR; and the last sentence of ¶ 91 of the PSR regarding how the Tennessee Department of Corrections classifies "Five Percenters." [Crim. Doc. 177]. Petitioner, through counsel, filed a sentencing memorandum, requesting a departure from the advisory guideline range based on the governments motion for downward departure and the new sentencing procedures set forth in *United States v. Booker*, 543 U.S. 220, 245 (2005). [Crim. Doc. 169]. Petitioner, through counsel, requested Petitioner receive reductions based on each element of his substantial assistance, enumerating each one, which would result in a 26-level reduction, placing Petitioner in Offense Level 9. [*Id*. at pp. 5-6]. At that offense level, Petitioner would have been subject to an advisory guideline range of 21 to 27 months. [*Id*. at p. 6].

On June 15, 2017, the Court sentenced Petitioner to a total of 130 months' imprisonment. [Crim. Doc. 191, p. 2]. Petitioner, acting *pro se* filed a direct appeal [Crim. Doc. 194], which was denied by the United States Court of Appeals on April 5, 2018, as the record revealed no issues of arguable merit for appeal. On April 12, 2019, he filed this § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief

under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III. ANALYSIS

As an initial matter, Petitioner raises two claims in this § 2255 motion: 1) ineffective assistance of counsel for failing to address the significant amount of assistance and cooperation that Petitioner provided prior to and during the investigation to where his sentence would have fallen well below the guideline range and the 130 months' sentence he received; and 2) that the Court erred in applying the leadership enhancement pursuant to U.S.S.G. § 3B1.1 when determining Petitioner's sentence. [Doc. 1; Crim. Doc. 249]. The Court will address Claim 2 and then will address Claim 1.

**A. Claim 2 – Court Erred in Sentencing Based on Leadership Enhancement**

***a. Collateral Attack Waiver***

As a preliminary matter, the government asserts that Petitioner explicitly waived his right to file a § 2255 motion except for claims of ineffective assistance of counsel or prosecutorial misconduct, and that the issue is procedurally defaulted as Petitioner failed to raise it on appeal. [Doc. 8, p. 4]. Accordingly, the government asserts that his § 2255 motion should be summarily denied. [*Id*.].

When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his sentence, he is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis

for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel." [Crim. Doc. 25, p. 20]. At Petitioner's change-of-plea hearing, the Court reviewed the waiver provision and verified that Petitioner understood the meaning of the waiver. The Supreme Court has held that "the representations of the defendant, his lawyer, and the prosecuter at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Petitioner admitted that he understood the terms of the waiver provision, and nothing in the record suggests otherwise.

The Court also agrees that this claim is procedurally defaulted because Petitioner failed to raise it on appeal. Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim

in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If a Petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such as when new evidence shows that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Here, Petitioner has not attempted to show cause or prejudice for his failure to raise this claim on direct appeal, nor has he attempted to show that he is actually innocent.

Moreover, Petitioner does not challenge the validity of the actual collateral attack waiver, suggest that he did not understand the waiver, or claim that he did not sign it voluntarily. Accordingly, because Petitioner is not attacking the validity of the plea itself, and because he expressly waived the right to collaterally attack his conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct, Claim 2 is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451.

***b. Merits***

Even if Petitioner's claim wasn't barred by his collateral attack waiver or procedurally defaulted, the claim would still fail on the merits. Petitioner argues that the leadership enhancement under U.S.S.G. § 3B1.1 should not have been applied as the government failed to meet the prongs required for an enhanced sentence under that section. However, this claim is contradicted by the record and is not credited. *Blackledge*, 431 U.S.

at 74. Petitioner was advised of the consequences of his guilty plea by the Court and counsel and stated under oath that he understood his decision. The record reflects his guilty plea was knowing and voluntary. Having waived his right to hold the Government to its burden of proof, he cannot complain the evidence against him would have been insufficient. At the change of plea hearing, the United States stated, "he [Petitioner] was a leader, organizer, manager or supervisor of criminal activity as laid out in 3(b)1.1(c) of the Sentencing Guideline Manual." [Crim Doc. 228, pp. 12-13]. Directly after that statement, the Court asked Petitioner whether he agreed with the Government's summary, to which Petitioner replied, "Yes, Sir." [*Id*. at 13]. Petitioner continued on to state that he was pleading guilty based on those facts because he was in fact guilty. [*Id*.].

Accordingly, Petitioner's Claim 2 will be **DENIED** as barred by his collateral attack waiver and procedurally defaulted.

**B. Claim 1 – Ineffective Assistance of Counsel**

As discussed above, Petitioner's claims of ineffective assistance of counsel are not barred by his collateral attack waiver. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for h[er] defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what she "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner's argument for ineffective assistance of counsel revolve around whether the credit he received for his cooperation was sufficient. Petitioner contends that his counsel and the Government failed to address the substantial amount of assistance

Petitioner rendered in another jurisdiction and thus, he is entitled to a more significant amount of relief under U.S.S.G. § 5K1.1. [Doc. 1].

The government responds that Petitioner has failed to allege any specific acts or omissions by counsel to establish either deficient performance or prejudice as required. [Doc. 8, pp. 3-4]. The United States asserts that Petitioner has not alleged or proven that the Court was not fully apprised of his assistance before selecting a sentence, nor that counsel possessed any other evidence that the Court might have found persuasive. [*Id*. at p. 4].

Petitioner's arguments are directly contradicted by the record and are not credited. *Blackledge*, 431 U.S. at 74. In Petitioner's sentencing memorandum, his counsel specifically enumerated all the assistance Petitioner provided, and requested the Court reduce Petitioner's offense level by 26 points based on his substantial assistance. [Crim. Doc. 176, pp. 5-6]. Petitioner's counsel cannot be deemed ineffective for doing precisely what Petitioner now claims he should have done.

Petitioner also fails to include factual support regarding his ineffective assistance claim. Thus, Petitioner's claim amounts to a conclusory allegation, which does not state a cognizable § 2255 claim. *See Green*, 454 F.2d at 53 (requiring that a § 2255 movant set forth facts entitling him to relief); *Worley v. United States*, Nos. 2:15-cr-12, 2:15-cv-305, 2018 WL 5984202, at *8 (E.D. Tenn. Nov. 14, 2018) (same). Further, Petitioner has not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice, nor has he alleged that his counsel knew of other information that the Court would have found persuasive at the sentencing hearing. Petitioner thus cannot bear his burden of

showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Accordingly, Petitioner's Claim 1 will be **DENIED** as Petitioner has not shown that his counsel was ineffective nor that he was prejudiced by any alleged ineffectiveness of counsel.

**C. Motion to Amend/Revise [Doc. 13]**

Petitioner, acting *pro se*, filed a motion to amend [Doc. 13], wherein Petitioner requests the Court allow him to amend his § 2255 motion. Petitioner's motion does not state how he would amend his original motion and cites to "*Anderson v. United States*, 39 Fed. Appx 132, 136 (6th Cir. 2002) (ruling that a habeas petitioner is allowed to amend his petitioner before any Response is filed by the Respondent, even if the one-year limitations period has expired)." [*Id*.]. Petitioner filed this motion in June 2020, well after the United States responded [Doc. 8] and Petitioner filed a reply [Doc. 11].

Plaintiff is proceeding *pro se* and "the allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner,* 404 U.S. 519, 520 (1972). However, the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996). Courts have not been "willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989) (citing cases). Liberal federal pleading standards do not permit litigants—even those acting *pro se*—to proceed on pleadings that are not

readily comprehensible. *Cf. Becker v. Ohio State Legal Servs. Ass'n,* 19 F. App'x 321, 322 (6th Cir. 2001) (upholding district court's dismissal of *pro se* complaint containing "vague and conclusory allegations unsupported by material facts"); *Janita Theresa Corp. v. United States Attorney,* No. 96–1706, 1997 WL 211247, at *1 (6th Cir. Apr. 28, 1997) (upholding district court's dismissal of *pro se* complaint whose allegations were "far too muddled to serve as a basis for a proper suit").

Leave to amend shall be given freely when justice so requires. Fed. R. Civ. P. 15. Rule 15 reinforces the principle that cases "should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F2d 637, 639 (6th Cir. 1982). However, the right to amend is not absolute or automatic. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F3d 545, 551(6th Cir. 2008). District courts consider a number of factors when determining whether to grant a motion to amend under Rule 15(a)(2) including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 597 F.3d 722,729(6th Cir. 2009).

Here, Petitioner has failed to provide the Court with any information on how amending his § 2255 motion would not be futile, would relate back to a timely pleading, or would not unduly prejudice the United States. Further, unlike in *Anderson v. United States*, 39 F. App'x 132, 136 (6th Cir. 2002), Petitioner has attempted to amend his motion well after the United States has responded and even after Petitioner has filed a reply, which would cause an undue delay in the proceedings and undue prejudice against Respondent.

Because Petitioner has not alleged any new counts in his motion to amend or provided any new supporting evidence to his current § 2255 motion, the Court finds that the amendment would also be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1965). Accordingly, Petitioner's motion to amend [Doc. 13] will be **DENIED**.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 249] will be **DENIED** and **DISMISSED**, and Petitioner's motion to amend [Doc. 13] will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan

United States District Judge